DENVER & R. G. R. Co. *v.* UNITED STATES TRUST Co

*(Circuit Court, S. D. New York. March 7, 1890.)*

RAILROAD COMPANIES—MORTGAGES—CONSTRUCTION.

The mortgage of a railroad provided that certain bonds secured by it remaining in the hands of the trustee should not be issued unless with the assent of a majority in amount of the outstanding preferred stock; and that, in the event any part of such bonds should be used for the purpose of constructing branches or extensions, the same should only be countersigned and delivered by the trustee at a rate not exceeding $20,000 per mile of new construction, and upon the certificate of the engineer of the mortgagor that sections of not less than 10 miles had been com-

pleted, ready for operation. In a suit to compel the trustee to countersign and deliver the bonds, *held*, that the mortgage did not authorize the trustee to refuse to issue them except for continuous sections of 10 miles each, but that the company was entitled to them for every 10 miles of new construction completed and ready for operation, whether in branches, each shorter than 10 miles, or in the excess over 10-mile sections.

In Equity.

*Charles M. Da Costa*, for complainant.

*Edward W. Sheldon*, for defendant.

WALLACE, J. This is a suit to compel the defendant to countersign and deliver certain mortgage bonds to the complainant. The defendant insists that it is not authorized, under the terms of its trust, to countersign and deliver bonds to be used for the purpose of constructing branches or extensions, unless the branches and extensions are more than 10 miles in length, and then only for the part included in the 10-mile sections. The mortgage deed, executed to the defendant as trustee, is conditioned to secure the payment of an issue of $42,000,000 of bonds created by the complainant; and contains a covenant on the part of the complainant that it will apply the proceeds of the bonds for no purposes other than those specified in the deed. The deed recites the purposes for which all but $6,143,000 of the bonds are to be used, and as to those provides as follows:

"The remainder shall be retained in the treasury of the party of the first part [the complainant] for future capital requirements, and shall not be issued by it unless with the assent of a majority in amount of the preferred stock then outstanding; and, in the event that any part of the bonds reserved as aforesaid shall be used for the purpose of constructing branches or extensions, the same shall only be countersigned and delivered by the trustee at a rate not exceeding $20,000 per mile of new construction, and upon the certificate of the engineer [of the complainant] that sections of not less than ten miles have been completed, ready for operation."

Defendant contends that this clause justifies its refusal, as a trustee, to countersign and deliver the bonds. The clause is certainly capable of the meaning that bonds reserved for capital requirements, if used to pay for new construction, shall only be countersigned by the trustee for 10-mile sections of completed lines. If this is its meaning, the complainant can only use bonds enough, if it builds a new line 29 miles long, to pay for 20 miles, cannot use any of the bonds to pay for the construction of lines shorter than 10 miles, and if it builds several lines, each of which consists of more than a 10-mile section, cannot use the bonds to pay for the excess, even though the aggregate of excess is more than 10 miles of new line. There does not seem to be any conceivable reason for thus hampering the complainant in the use of the bonds. The deed mortgages railroad lines which, from their contiguity to mines, may, as new mines are opened, require extensions or branches to connect them with the new sources of traffic. At the time the deed was executed there were numerous branch lines of this description, of which 16 were less than 10 miles long. The deed mortgaged these branches. It also mortgages all the new lines thereafter to be acquired by the com-

plainant, and requires the complainant, from time to time, to make conveyances thereof to the trustee. It is obvious that the parties to the deed must have expected that new branches or extensions to reach newly-opened mines would have to be built or acquired, and that such lines would be longer or shorter, depending upon the particular circumstances of each case. It can hardly be supposed, therefore, that it was in the minds of the parties that there could be any objection to the construction of branches or extensions, however long or however short they might be; and, if there was any reason why the complainant should not use its reserved capital for building such lines, it can only be inferred from the language of the clause in question. Not only is there no express condition in the deed that the complainant shall not use the bonds for new construction of branches of less than 10 miles long, or for new construction where the new lines overrun 10-mile sections, but the clause in question does not prevent the complainant from using the bonds to pay for branch lines, irrespective of their length, which it may see fit to buy of other persons. If a mine-owner should build a railway 9 miles long, or 29 miles long, to connect his property with the lines of the complainant, and subsequently the complainant should conclude to purchase it, the latter could use the bonds for that purpose, and the defendant would have to countersign them. The clause, therefore, cannot have been intended to restrict the complainant in the acquisition of new branches or extensions to those not less than 10 miles long, or to those having 10-mile sections, or from using the bonds to pay for such branches, irrespective of their length. And it would be absurd to construe it as intended to prohibit the use of the bonds for building such branches, while permitting it for buying them.

The object of the clause manifestly is to protect the bondholders against the creation of mortgage indebtedness for new construction not secured by actually completed new lines, and against the contingency that bonds might be issued ostensibly to pay for new construction, and be used for some object from which the bondholders would derive no benefit. It is framed so as to enable the trustee to know that the bonds to be issued represent completed lines ready for operation, and not merely projected new construction. If it had been designed to prohibit the complainant from using the bonds reserved for capital requirements for the building of branches shorter than 10 miles long, or for the excess of construction beyond 10-mile sections, that intention could have been easily expressed, and probably would have been expressed in unequivocal terms. It is more reasonable to assume that the 10-mile provision was inserted in the deed in order to relieve the trustee from the inconvenience of having to countersign and deliver bonds less than for $200,000 at a time, and not to restrict the complainant from using the bonds except to pay for 10-mile sections. The meaning of the clause is sufficiently ambiguous to justify the conduct of the defendant, in the absence of a judicial interpretation of the clause, in refusing to countersign the bonds, but its contention is erroneous. A decree is ordered for the complainant, without costs.